## JOHN BRAZER *versus* MARY M. CLARK.

Whether, in the case of money paid by a surety on a bond, an action of *debt* will lie against the principal obligor or a co-surety for indemnity or contribution, *quære.*

Where an action brought by a legatee was defended by the executor by direction of the heirs and other legatees, he was held not to have committed waste, notwithstanding the plaintiff prevailed.

An executor is not liable for waste committed by his co-executor.

But, *it seems*, if two executors enter into a joint and several bond to the judge of probate for faithful administration, both are responsible for all acts done by either during the continuance of the joint executorship.

Two executors give a joint and several bond with sureties, conditioned that the two shall faithfully administer; one dies and the survivor afterwards commits waste; and a judgment recovered on the bond against him and the sureties is satisfied by the sureties. *Held*, that they have no right of action for indemnity or contribution against the heir or representative of the deceased executor.

In an action on a probate bond against an executor for waste, in suffering property of the testator to be taken and sold on execution, interest on the sum ascertained on a hearing in chancery to be due, was allowed from the date of the writ only, and not from the time when the property was at its highest value in the executor's hands, or the time of the sale on execution. *See note, p.* 97.

THIS was an action of *debt*. At the trial, before the chief justice, it was proved, that Abiel Winship and J. P. Clark were executors of the will of Edward Tyler, and in 1812, with the plaintiff and one Page as their sureties, gave a joint and several bond to the judge of probate, conditioned that "Winship and Clark" should faithfully perform the duties of executors.

Hannah L. Tyler brought a suit for a legacy against the executors, which was defended by them at the request and by the written direction of other legatees and of the heirs of Edward Tyler, but judgment was recovered by the plaintiff in the suit in 1814. Clark died before the rendition of judgment, and after his death Winship acted as sole executor. The judgment was satisfied by a sale on execution of divers shares in the stock of the North American Insurance Company, which produced less than half their nominal value. The stock of that company began to fall in 1813, in consequence of spoliations, and was at the lowest price in the beginning of 1815. The shares mentioned were sold at a moment of especial depression, and brought as much as any shares sold at that time. The office was closed in January

Brazer
v.
Clark.

1815, and in February a dividend of capital was made, and paid off in six per cent. stock. This dividend was eighty per cent. Two other dividends amounting to above nine per cent. were afterwards made. In 1822 a suit was brought upon the bond, in the name of the judge of probate, against Winship, the surviving executor, and the two sureties. The breach alleged was the suffering the insurance shares to be taken and sold on execution; and this having been determined by this Court to be waste, at March term 1824 judgment was rendered in favor of the judge of probate for the penalty of the bond, and on a hearing in chancery, execution was awarded for the sum of 1213 dollars, 35 cents, damages and costs of suit. No execution was taken out, but that sum was paid by the plaintiff and Page, one half by each.*

---

* In the case of *Dawes, Judge &c.* v. *Winship et al.* above referred to, a question was raised as to the allowance of interest.

PUTNAM J. delivered the opinion of the Court  This is a claim by the heirs against an executor for waste, which consisted in his permitting an execution to be levied upon twenty shares of the stock of an insurance company, belonging to the testator's estate, and the shares to be sold at an amount greatly reduced from their value at some former time when the executor might have sold them. The amount of the waste has been ascertained according to the principles decided by the Court to be applicable to the case, and the question is, what sum shall be added to that amount for interest. On the part of the plaintiff it is contended, that the interest should be charged from the time when the shares were of the greatest value in the executor's hands, — or when the waste was permitted by the sale of them upon the execution, — or certainly from the date of the writ; — that if this property had been a specific legacy, and been so diminished in value, the executor would be chargeable in equity with interest from the time when he should have disposed of it upon the most advantageous terms. And the case of *Wood* v *Robbins*, 11 Mass. R. 504, is supposed to settle principles which support the plaintiff's claim. It is not however strictly applicable, because in the case at bar the executor has not had any benefit from keeping these shares. It is not as if he had had a sum of money, by fraud, in his hands, making use of the same. At most, the case at bar is one of neglect, of technical waste, arising from loose management, rather than waste from any ill intent or wrong motive. It seems to us that the value which has been ascertained, should have been paid when the writ was purchased, and that the executor ought not, under the circumstances of the case, to be charged with interest before that time. He may be considered as having then in his hands wrongfully the amount which has been ascertained to be due. He defended at his peril. The result has shown that he should have paid at that time

Sullivan and Mason, for the plaintiff; Aylwin, for the defendant.

The defendant is the daughter and sole heir of Clark, the executor ; and estate more than sufficient to satisfy the claim of the plaintiff descended to her from her father ; and this action was brought within the time prescribed by the statute, providing for the bringing of actions against the heirs, devisees or legatees of a deceased debtor.

The plaintiff contended, that notwithstanding Clark died before the rendition of the judgment in the suit of Hannah L. Tyler, to satisfy which the insurance stock was sold, he was guilty of unfaithful administration in defending that suit, and in not selling the shares when they would have brought the same price as other like shares sold by him belonging to the testator's estate, and therefore was chargeable equally with the other executor for the waste which was the cause of the judgment upon the probate bond ; but the chief justice ruled that the executors were not chargeable with misconduct in defending that suit.

It was then contended, that waste having been committed by Winship after the death of Clark, the estate of Clark was liable on account of his being joint executor with Winship, and upon the principle that the bond being a joint obligation of Clark and Winship as principals and Brazer and Page as sureties, Clark and Winship were each liable for the whole debt in case of non-fulfilment of the condition, and were each liable to the sureties in the same manner as to the obligee ; but the chief justice was of a different opinion and ruled accordingly.

The plaintiff thereupon consented to become nonsuit, with liberty to move that the nonsuit should be taken off.

*J. B. Davis*, in support of such a motion, insisted that *March 12th* Clark committed waste in defending the action brought by Hannah L. Tyler.

But admitting that no waste was committed until after Clark's death, he said that a probate bond is an obligation for the payment of money, and is to be construed like any other bond ; that Clark and Winship were not only joint executors, but likewise joint obligors, and they bound themselves to save their sureties harmless.  Co-obligors who are principals are mutually liable to each other for contribution ;

and if Winship had paid the whole amount of the judgment, he would have had a remedy against Clark or Clark's heir for a moiety. If then the present action is not sustained, the surety will stand in a worse situation than the principal. So likewise sureties have a remedy against each other, and if Brazer had paid the whole sum, he could enforce contribution from Page ; and it will not be contended that sureties have not as great a right against the principal as against each (ther Com. Dig. *Chancery*, 2 *S* and 4 *D* 6. If the plaintiff and Page had been insolvent, and an action had been brought by the judge of probate against the defendant upon the bond, she would have had no valid defence ; and if such an action would lie, it is plain that the present is maintainable, inasmuch as the surety who has paid the debt stands in the place of obligee. *Wright* v. *Morley*, 11 Ves. 22 ; *Hayes* v. *Ward*, 4 Johns. Ch. R. 123 ; *Clason* v. *Morris*, 10 Johns. R. 524. By the breach of the condition of this bond the penalty became a joint debt to the judge of probate ; 5 Bac. Abr. 156, *Obligation*, *A* ; and in the case of a joint contract the sureties have a remedy against either principal for the whole money paid by them. *Duncan* v. *Keifer*, 3 Binn. 126.

It was also contended on the part of the plaintiff, that Clark, if not liable as principal, must at least be considered as a co-surety for Winship's faithful administration.

*Prescott* and *Peabody*, for the defendant, contended that no waste had been committed until after Clark's death ; *St.* 1783, *c.* 32, § 8 ; that if one of two joint executors dies, or is removed from office, he (or his representative) is not liable for any subsequent transactions in the administration of the estate, but the other becomes sole executor and the sureties continue bound for his faithful administration ; Toller, (3d ed.) 114, 363 ; 3 Bac. Abr. 56, *Executor &c.*, *G* ; *The People* v. *Byron*, 3 Johns. Cas. 59 ; that an executor is not chargeable with a *devastavit* of his co-executor ; Toller, 430 ; 3 Bac. Abr. 31, *Executor &c.*, *D* 2 ; *Hargthorpe* v. *Milforth*, Cro. Eliz. 318 ; *Douglass* v. *Satterlee*, 11 Johns. R. 21 ; that Clark could not be held as surety, for he signed as principal only ; and that the form of the action was misconceived. *Bachelder* v. *Fisk*, 17 Mass. R. 464.

*Loring*, in reply, to the point that *debt* was a proper form of action, cited 8 Johns. R. 192 ; Cowp. 525 : — Bac. Abr. Debt, *F* ; 14 Vin. Abr. 239, *Heir, B* 2 ; Finch, 296 : — 1 Salk. 23 ; 1 Ld. Raym. 69 ; 1 Doug. 1 : — 2 Com. Contr. 179 ; 2 T. R. 104 ; 2 Bos. & Pul. 268 ; 13 Johns R. 58 : — 3 Com. Dig. *Dett, A* ; 2 Bl. Comm. 464 : — *St.* 1788, *c.* 66, § 4, 5 ; 7 Mass. R. 202 ; 10 Mass. R. 368 ; 1 Mason, 243.

He said the ground upon which the plaintiff proceeds, is not that the defendant is liable because her ancestor was co-executor with Winship, and a *devastavit* was committed by the latter, but because, as principals, Clark and Winship entered into a joint contract for faithful administration, for the performance of which joint contract the plaintiff was their surety, and the contract being broken, they and their representatives are answerable to the surety for the injury he has sustained by the breach, in the same manner as they would have been in case of any other joint undertaking.

Putting aside the technical character of the bond as a covenant to pay money, and looking at it merely as a contract between the principals and the obligee, we find it to be, " that *they* shall return an inventory," &c., and not that. *each* shall perform whatever he may elect or be called upon to perform If it had been in form a covenant, stating that in consideration &c. they the said C. and W. covenanted and agreed that they would faithfully administer, &c., it could hardly be doubted that each would have been thereby bound for the other. It would not have availed them to say, that by the common law one executor is not answerable for the *devastavit* of another ; the reply would have been, that they had made themselves answerable by their written contract.

The contract with the judge of probate then was a joint one. The sureties considered themselves responsible for a joint undertaking, and trusted to the prior liability of the principals. It seems monstrous to say that Clark and Page are liable as sureties on the joint contract of their principals, and yet that the latter are not bound by it as a joint contract.

Nor is there any greater hardship upon the heir by reason of this construction, than necessarily exists in other cases of

*Margin note: Brazer v. Clark.*  *Margin: 101*

Brazer
v.
Clark.

joint contracts. In the common instance of the death of a partner in trade, however wasteful or fraudulent the survivor may be, the representatives of the deceased are responsible to the extent of assets for the joint contracts made during his life.

The contract by which the parties were bound, and upon which the money was paid by the plaintiff, in its true nature, is a joint contract for the payment of money. Upon the execution of the bond an inchoate debt arose against the defendant's father and Winship. Its becoming absolute depended on a contingency. That contingency happened, and the debt is to be considered as existing from the date of the bond. The plaintiff was sued for that debt, which had thus become due, and has paid it, and he has therefore a right of indemnity against all who were liable as principals for its discharge.

A bond is a writing obligatory for the payment of money. The condition is merely a defeasance. If it is not performed, an absolute debt exists ; not a mere liability for damages. The penalty becomes the legal debt, and an executor may cover assets of the testator to that extent. 5 Bac. Abr. 156, *Obligation, A.* The condition does not affect the nature of the debt, but simply determines its existence. Suppose the condition in the bond in question had been for the payment of a sum of money in one year, and the defendant's father had died before the expiration of the term, and Winship had become insolvent, and the plaintiff had paid the obligee, — would not the plaintiff have had a good cause of action against the defendant ? And how can that case be distinguished from the present, if it is the writing obligatory, and not the condition, upon which the parties are made liable ?

The manner in which the plaintiff was compelled to pay the money, to obtain reimbursement of which he brings this action, shows that this is the correct view of the case. He was sued in an action of debt for payment of the amount stipulated in the bond, and not in an action of the case to recover damages for a *devastavit ;* he was declared against as for a debt due at the date of the bond, and judgment was rendered against him accordingly for the whole penalty. It

was therefore in every point of view a debt ; but it was a debt which was due from the defendant's father as principal, and from the plaintiff only as surety. The judgment did not create the debt ; it became absolute upon the breach of the condition ; and it now stands against the plaintiff, who remains liable to further executions, should any new wrong be discovered. If the recovery was not for a debt simply ¿s such, why should not the judgment have been merely for the amount ascertained in chancery to be due ? Com. Dig. *Chancery*, 2 *S* and 4 *D* 6 ; 3 Binney, 126.

It has been said that the true construction of the condition of the bond is, that if C. and W. or the survivor of them, shall faithfully administer, &c. But this construction would merely affect the nature of the contingency, upon the happening of which the debt would become absolute, and not the respective rights and liabilities of the parties under the obligation, after that effect had been produced.

It has been asked, whether, if the judge of probate had removed Clark from the office of executor, he could be answerable for subsequent misfeasances by Winship. Our answer is, that whatever might be the effect of such removal upon the relations of the principals, had they assumed no other liabilities than those imposed by law upon all executors, they cannot control the written and voluntary contract into which they have entered, and upon the terms and legal effect of which their sureties depended when they became parties to it. Although one executor may not by law be liable for the tortious acts of his co-executor, he certainly may, if he sees fit, agree to become so ; and when he enters into such a contract, and requests his friends to be sureties for its fulfilment, it is hard to deprive them of the right to consider him so responsible.

Again, it has been said that the legislature did not mean, by requiring bonds, to change the relative duties and liabilities of executors. This is true ; but the remark has no application to the question at bar, inasmuch as the legislature does not require executors &c. to give joint bonds ; and by giving separate bonds they would each avoid all responsibility for

Brazer
*v*
Clark.

*Aug.* 1827,
*at Taunton.*

the acts of another, not imposed on them by the rules of the common law.  *St.* 1783, *c.* 24, § 17.

The opinion of the Court was drawn up by

PARKER C. J.  An objection is taken to the form of the action, being debt, and it is indeed not clear that debt will lie, because there is no certain sum to be recovered, and no express contract to pay ; the claim resting wholly upon an implied promise from a principal to indemnify his surety, or, in one view of the case which has been presented, a similar promise of a surety to contribute in favor of his co-surety ; but we do not wish to decide the case on this point, when the result of our deliberations is, that the plaintiff is not entitled to recover in any form of action.

In the first place, we do not think it is shown by any evidence in the case, that there was any breach of the condition of the bond during the lifetime of Clark.  The non-payment of the legacy of Hannah L. Tyler, and suffering a suit to be commenced, and defending that suit, is alleged as maladministration on his part ; but that legacy was disputed by the heirs, and the suit was defended at the instigation of the other legatees, so that the executors were entirely justified in that proceeding.  It appears then that while Clark lived, there was no fault in the executors.  Upon his death the whole trust devolved upon the surviving executor, Winship, who, by delaying to satisfy the judgment recovered by Hannah L. Tyler, when he had sufficient assets, or at least by delaying to sell the insurance stock, which it appears might have been done, after the judgment recovered, at a loss of not more than ten per cent., suffered it to remain until taken on execution, on which it was sold at a loss of more than fifty per cent. The wrong done, which was construed to be waste and a breach of the condition of the probate bond, was wholly the act of the surviving executor, and not imputable at all to the deceased executor, Clark.  It is not then upon this ground that the plaintiff can recover in this action.  Executors are not liable for waste committed by each other, nor, if one receives assets without the knowledge of the other and misapplies them, is the latter, or his estate, liable at the common law.  *Hargthrope* v. *Milforth,* Cro. Eliz. 318 ; Toller, 472

Bac. Abr. *Executors &c.*, *D* 2 ; Godolphin, 134 ; *Douglass v. Satterlee*, 11 Johns. R. 21.[1]  The case in Cro. Eliz., which is cited in Bacon and Comyns, and may therefore be taken to be good law, is where two executors continued in the trust and one of them committed waste, yet the other was charged only to the amount of assets he had actually received. Surely then, where one dies and the other afterwards commits waste, the estate of the deceased executor ought to be held discharged.

But although this doctrine is not strenuously denied, it is nevertheless insisted that the plaintiff is entitled to recover on the ground of contract, that is, that Clark, being bound jointly and severally with Winship in the bond, is answerable for all Winship's acts as well as his own, and that his estate continues liable after his death.  Though this position is true to a certain extent, it may well be doubted whether it is so in the degree necessary to support the plaintiff's claim in this action.  The legislature cannot be supposed, in requiring the bond, to have intended an interchange of the liability of executors as it existed at the common law.  They may be jointly liable for all the acts done by either during the continuance of the joint executorship, for it is as executors they are bound, and that liability incurred during the joint trust may continue upon the estate of the one who dies ; and yet when the interest and duty are severed by death or removal of one from office, he may not be liable for acts done by another after the severance.  And we are inclined to think that this, so consistent with justice and equity, is the law. All executors, while living and in the enjoyment of the trust, may inspect and control the conduct of each other ; they may watch over the funds ; and they may complain of the misconduct of any one, to the judge of probate, who may in his discretion remove him from the trust ; and so there may be no great hardship in their being made answerable for each other.  But at the death of one, the whole power devolves upon the survivor, and the representatives of the deceased have no power or means of controlling his conduct, or taking

[1] See *Peter* v. *Beverly*, 10 Peters, 532; 2 Williams on Executors, 1118, *et seq.*

Brazer
v.
Clark.

105

Brazer
*v.*
Clark.

the funds into their custody. It would be hard then that they should be answerable for his delinquencies. By the tenor of their bond, the executors are bound only for the joint executorship ; they may be answerable for all defalcations which accrue during that trust, and their estates be liable for the deficiencies, notwithstanding they have had no participation in the negligence or fraud ; but they are not bound in this manner for acts or neglects which take place after their power has ceased. The survivor succeeds to the whole authority and power, and he alone and those who are sureties for him are responsible.

It has been urged, however, that Clark's estate, if not answerable as principal for the default of Winship after Clark's death, is at least liable on the ground of suretiship, Clark being to be considered in the light of a surety ; but this would be changing the character of his engagement. He was principal in the bond, and liable as such, and when discharged from that liability, he incurred no other. We are of opinion therefore that the verdict is right, and judgment must be entered thereon.